No. 17,783.

THEODORE WILLIAM SMALLEY, ETC. v. PEOPLE OF THE STATE OF COLORADO.
(304 P. [2d] 902)

Decided December 3, 1956.   Rehearing denied December 31, 1956.

Mr. EDWARD H. SHERMAN, Mr. MAX M. GLASTON, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. JOHN W. PATTERSON, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the Court.

PLAINTIFF in error, to whom we will refer as Smalley, is now and has been confined in the state penitentiary since September 9, 1946. At that time, with a codefendant, he was charged with and convicted of burglary with and without force, and on account of a previous record, Smalley was charged in the information as an habitual criminal, having committed three previous felonies. Upon conviction he was sentenced under the habitual criminal act to life imprisonment.

The information, after charging the offense of which he was convicted in 1946, also, in other counts, set out the alleged felonies, particularly the third count which alleged and charged a burglary and larceny conviction on October 24, 1932; the fourth count, a conviction of grand larceny on November 20, 1933; and the fifth count, a conviction of burglary and larceny on April 17, 1936, at which time and upon such conviction he was sentenced to the state penitentiary.

On April 24, 1952, Smalley filed a motion to set aside the judgment and life sentence, which he claimed to be void and erroneous, and prayed that he be discharged or resentenced nunc pro tunc according to law. This motion was based upon the claim that at the time defendant was convicted of the charge set forth in the third count of the information and was sentenced to the state reformatory, he was nineteen years of age and this was a first offense. Upon denial of this motion, Smalley prosecutes this writ of error directed to the judgment of the district court of the City and County of Denver.

The statute under which this sentence was imposed is known as the "Habitual Criminal Act"; it was passed in 1945, now appears as C.R.S. '53, 39-13-1, and the pertinent part thereof is as follows:

"Every person convicted in this state of any felony, who shall have previously three times been convicted, upon charges separately brought and tried, either in this state or elsewhere, of a felony or of an assault to commit a felony, or of a conspiracy to commit a felony, or, under the laws of any other state, government or country, of a crime which, if committed within this state, would be such a felony, shall be adjudged an habitual criminal and shall be punished by imprisonment in the state penitentiary for the term of his or her natural life. Such former conviction or convictions and judgment or judgments shall be set forth in apt words in the indictment or information. * * *."

It is clear that the required former convictions must be felonies and felony is defined by our constitution in Article XVIII, section 4 as follows:

"The term felony, wherever it may occur in this constitution, or the laws of the state, shall be construed to mean any criminal offense punishable by death or imprisonment in the penitentiary, and none other."

■ ■ A casual reading of this section clearly discloses that "felony" under our constitution is based upon the place of confinement in case of conviction, and the

test by which an offense is determined as to whether it is a felony or not, is by the punishment prescribed. Smalley was under the age of twenty-one when he was convicted of his first offense and sentenced to the reformatory. For the purpose of meeting or satisfying the requirements of the constitution this reformatory sentence does not suffice for a felony conviction. If there could be any doubt about the constitutional meaning of the word "felony" in our habitual criminal act, we must, of course, upon construction, give the construction that favors the liberty of the accused. The reformatory sentence was mandatory due to the age of the accused. This court said in *People v. Godding,* 55 Colo. 579, 583, 136 P. 1011: " * * * it is manifest that this court has expressly recognized this section as a definition of the term felony, and that the test by which to determine whether an offense is a felony is by the punishment prescribed."

█ All of this reveals that the trial court was without power to impose a life sentence under the habitual criminal act by using a previous conviction, namely, the reformatory sentence in 1932. We believe that sufficient has been said herein to clearly support our determination that the sentence imposed upon Smalley is contrary to law; therefore the trial court is directed to set aside the sentence and impose such sentence as it may determine under the statute in such case made and provided, with full time allowance thereon for time already served.

MR. CHIEF JUSTICE ALTER, MR. JUSTICE KNAUSS and MR. JUSTICE SPARKS dissent.

MR. JUSTICE SPARKS dissenting.

I respectfully dissent from the majority opinion herein announced. Article XVIII, section 4, of our constitution, already mentioned, states as follows:

"The term felony, wherever it may occur in this Constitution, or the laws of the state, shall be construed to

mean any criminal offense punishable by death or imprisonment in the penitentiary, and none other."

To this rather simple definition the majority opinion adds the words "and where the offender has been punished by a penitentiary sentence therefor." The constitution seemingly defines a crime, but the majority opinion insists that it defines a person.

The "non-felonious" crime committed by the defendant here was burglary. Our statute reads that burglary "shall be punished by confinement in the penitentiary for a term of not less than one year, nor more than ten years." C.R.S. '53, 40-3-6. It seems unquestionable, therefore, that burglary, being punishable by imprisonment in the penitentiary, is a felony as clearly defined in the constitution. The fact that the legislature has wisely provided substitute punishment, to-wit, probation and reformatory sentences, does not in any manner change the nature of the crime nor absolve the perpetrator from his willful criminal act.

The majority opinion is largely predicated on the finding that the reformatory sentence was mandatory under C.R.S. '53, 39-10-1, as follows:

"Courts having criminal jurisdiction in Colorado shall sentence to the state reformatory all male persons and none other, duly convicted before them of a *felony* for the first time, who at the time of the sentence shall be of the full age of sixteen years and not more than twenty-one years; * * * provided that they shall sentence to the state penitentiary at Canon City any male persons between the ages of sixteen and thirty who shall be convicted of crimes involving the penalty of imprisonment for life, or the crime of murder in the first or second degrees or voluntary manslaughter." (Emphasis supplied.)

This statute directs our courts to mete out reformatory sentences to persons under the age of twenty-one years "duly convicted before them *of a felony for the first time.*" In short, the statute states that there shall be a reformatory sentence *because of the commission of*

*a felony.* The majority opinion states that *because of the reformatory sentence* there is no felony. Following this line of reasoning it becomes embarrassingly evident that a "first felony" can never be committed by a male person under the age of twenty-one, with the exception of the few crimes for which reformatory sentences are not permitted. He is accordingly sentenced to the reformatory for that which he commits not. Females, however, apparently do not enjoy this peculiar immunity and are felons at first blush.

The Habitual Criminal Act does not create nor define any criminal offense. It prescribes only a method of punishment for those who by their repeated vicious propensities have demonstrated their unfitness to roam at large. Despite the compelling necessity for carrying out the clear intent and mandate of this legislation, it is my conclusion that this court, through a process of semantics, has twisted and tortured the plain meaning of the statute into a Gordian knot, without having at hand a substitute for the sword of Alexander.

It is my conclusion, therefore, that the judgment of the trial court should be affirmed. I am authorized to state that Mr. Justice Knauss concurs in this dissent.

On petition for rehearing MR. JUSTICE MOORE specially concurring.

Following the announcement of the court's opinion in this cause, and during the time consumed in filing the petition for rehearing and consideration thereof by the court, there has been considerable misunderstanding in the public mind concerning the opinion and the basis upon which it rests.

In order that there can be no misunderstanding concerning my views upon the controlling questions, I feel compelled to state them in my own way as briefly and pointedly as I can with due regard to the importance of the matters involved. The question to be answered is: *Where a person is charged with the offense of burglary, and it is alleged, by separate counts of the in-*

*formation, that the accused has theretofore been three times convicted of a felony; and where it is admitted that the first of the alleged prior offenses was committed when the accused was under twenty-one years of age and for that offense he could not be punished by imprisonment in the penitentiary; can that offense be a first felony conviction to be used as a basis for prosecution of the accused as an habitual criminal and imposition of judgment and sentence of life imprisonment?*

I have no hesitancy in answering that question in the negative. Fundamental concepts most familiar to students of the law dictate the negative answer. Before considering the specific provisions of the constitution and statutes of Colorado a few bedrock legal principles must be brought to mind.

First. The constitution is the fundamental law. No statute can change it or destroy the protection which it affords.

Second. Any statute purporting to subject an accused person to an increased penalty for a violation thereof because of the fact that he has at some time previously been convicted of another offense, must be strictly construed against the right of the state to demand the increased punishment. *O'Day v. People,* 114 Colo. 373, 166 P. (2d) 789. Where a constitutional provision dealing with the subject of crime, or a criminal statute, admits of two constructions, "that which is more favorable to the defendant is to be preferred." *Brooks v. People,* 14 Colo. 413, 415, 24 Pac. 553; *Failing v. People,* 105 Colo. 399, 98 P. (2d) 865; *People v. Mooney,* 87 Colo. 567, 290 Pac. 271. In *Polly v. People,* 107 Colo. 6, 12, 108 P. (2d) 220, a construction of a penal statute was necessary and this court said: " * * * all doubts are resolved against criminal statutes and in favor of the defendant. * * *." Thus in the instant case if there can be any reasonable doubt concerning the construction to be given the pertinent portions of the constitution and statutes herein-

after set forth, that doubt must certainly be resolved in favor of the defendant.

On the practical side it must be admitted that the habitual criminal law imposes harsh penalties out of proportion to the gravity of the substantive offense which constitutes the fourth felony conviction, resulting in life imprisonment. The writer knows full well from many years in active practice in the prosecution as well as the defense of criminal cases, that if an accused has been two or three times convicted of crime it takes little more than strong suspicion of guilt to bring about a conviction of a subsequent offense, resulting in a life sentence. Unless a defense can be presented by witnesses other than the accused, as a practical matter, a third offender hasn't a chance once his previous record is made known to the jury. For these reasons, as well as others not mentioned, a strict construction of the pertinent provision of the law is mandatory.

Let us now consider the language to be construed, starting, as we must, with the foregoing uppermost in mind. Pertinent provisions of the habitual criminal act, C.R.S. 1953, 39-13-1, are as follows:

"Every person convicted in this state of any felony, who shall have previously three times been convicted, * * * of a felony * * * shall be adjudged an habitual criminal and shall be punished by imprisonment in the state penitentiary for the term of his or her natural life."

This statute does not define the word "felony." We turn to the constitution of Colorado for that definition, where we find the following: (Article XVIII, sec. 4.)

"The term felony, wherever it may occur in this constitution, *or the laws of the state,* shall be construed to mean *any criminal offense* punishable by death or imprisonment in the penitentiary, *and none other.*" (Emphasis supplied.)

The majority of this court are of the opinion that the words "any criminal offense punishable by * * * imprisonment in the penitentiary, and none other" under

the rule of strict construction cannot be held to mean *any crime which if committed by an adult person is punishable by imprisonment in the penitentiary.* The constitution emphatically does not expressly so provide. The words "any criminal offense * * * and none other," must be construed with relation to a particular transaction and the identity of the accused is inseparably connected with that transaction. If, as here, the law of the state prohibits the imposition of a sentence to the penitentiary for the "criminal offense" in question, I am at a loss to see how the requirement of the constitution has been met. Under the constitutional definition a "criminal offense" cannot be classed as a felony unless the person convicted thereof could be lawfully sentenced to the penitentiary. Such a sentence in the matter involved in this cause was forbidden under the law. The law does not punish "offenses." It punishes individuals who commit offenses. No offense is "punishable" until a person stands before the court to receive sentence, and if such person is under twenty-one years of age as a first offender his offense is not "punishable" by imprisonment in the penitentiary. There cannot be "any criminal offense" punishable in any manner whatever until a person has committed the act and that person must be punished only as provided by law applicable to him.

It may be argued by those who cry out for the last "pound of flesh" that another construction could reasonably be given to sustain the life sentence. I say that to give that construction would be to ignore our numerous decisions which demand a construction favoring the defendant if such a construction appears to be reasonable.

I am content to join distinguished company in the persons of Mr. Justice Burke and the late Mr. Justice Hilliard who have heretofore spoken fluently on this subject. In *Routa v. People,* 117 Colo. 564, 581, 192 P. (2d) 436, the latter quoted from an opinion by the former as follows:

"We cannot close our eyes to the fact that this statute

is drastically in derogation of the common law and hence by ancient and applicable rule must be strictly construed. It is no light thing to double and treble the maximum sentence of the criminal law, to say nothing of relegating a malefactor to a life of penal servitude."

I am in complete agreement with this view and I believe the language applicable to the case at bar.